1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

MICHAEL PERRAULT,

     Petitioner,

    v.

TIM VIRGA, WARDEN,

     Respondent.

Case No.: 11-CV-3298 YGR

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

**INTRODUCTION**

    Now before the Court is Petitioner Michael Perrault's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 concerning his 2006 conviction in Contra Costa County Superior Court. ("Petition," Dkt. No. 1.)  For the reasons set forth below, the Petition is **DENIED** as to all claims.  In addition, no certificate of appealability will be issued.

**BACKGROUND**

**I.**    **CASE HISTORY**

    On November 14, 2006, a Contra Costa County jury convicted Petitioner of first degree murder, California Penal Code section 187, with personal use of a firearm causing great bodily injury or death within the meaning of California Penal Code section 12022.53(b), (c), and (d). (Ans., Ex. 1 at 350.)  Petitioner filed a motion for a new trial, which was denied, and on June 22, 2007, he was sentenced to two consecutive 25-year to life terms.  (Ans., Ex. 1 at 387–88, 390–91.)

1    On January 27, 2010, the California Court of Appeal affirmed the judgment of conviction.

2 (Ans., Ex. 2.)  On April 14, 2010, the California Supreme Court denied Petitioner's petition for

3 review without comment.  (Ans., Ex. 4.)

4    On July 6, 2011, Petitioner filed the instant Petition.  (Dkt. No. 1.)  On July 16, 2012, the

5 Court issued an Order to Show Cause.  (Dkt. No. 3.)  Respondent filed an Answer to the Petition

6 (Dkt. No. 9) and Petitioner filed a Traverse (Dkt. No. 10).

7 **II.    FACTS**

8    In an unpublished opinion addressing Petitioner's claims on direct appeal, the state appellate

9 court set forth the following summary of the facts:

> On the evening of March 4, 2006, defendant was at his home on Kendall Street in Crockett when he received a call from Curtis Carr. Defendant had known Carr since they were children. Carr was present when defendant's best friend, Nicholas Schwind, was killed. Steven Contestable was identified as a possible suspect in Schwind's murder, but had not been arrested. Defendant was upset about Schwind's murder and wanted to kill anybody that had anything to do with it.
>
> Defendant agreed to meet Carr at the Sizzler restaurant. After defendant spoke with Carr, Jack Simmons and Simmons's friend, James Newman, stopped by defendant's apartment to hang out. Defendant was upset by Carr's call and left the apartment in a hurry. Simmons and Newman followed him out of the apartment and attempted to follow defendant. Defendant drove away fast in a Dodge Intrepid. Defendant called Simmons and told him he was on his way to Sizzler "to go take care of some business." Simmons and Newman then drove toward Sizzler.
>
> That evening, several witnesses in the vicinity of the Sizzler restaurant heard shots near the entrance to the restaurant and saw an Intrepid flee from the scene. Immediately after hearing the shots, Bobby Mask, who was in the restaurant, ran out and saw Carr laying on the ground near the entrance to the Sizzler. Carr had a cell phone in his hand. Mask returned to the restaurant and told them to call 911. Officer Shilo Olson responded to the scene. Olson approached Carr and found him lying on his back. He was not moving and his hands were above his head. He had a loaded firearm tucked into the front of his pants that was clearly visible. Olson saw that Carr had a cell phone by his right hand and that a set of keys was near his left shoulder. The cell phone showed that a call was made to or received from defendant's cell phone number at 9:03 p.m.

2

Meanwhile, Simmons and Newman opted to drive to the Motel 6, which was to the left of the Sizzler restaurant, because Simmons saw a police car in the restaurant's parking lot. As they arrived at the Motel 6 parking lot, Simmons received a phone call from defendant in which defendant might have told him that he took care of business and killed Carr. Defendant sounded scared and told him, "well, leave go, go, go."

Defendant returned home and told his girlfriend, Candace Wright, " 'it's done.' " She thought he meant that something had happened between him and Carr. Defendant seemed relieved. He told Wright that they needed to get rid of the Intrepid and told her he was worried about it many times over several days. Wright eventually arranged to have the Intrepid returned to the broker from whom she purchased it. In the days after Carr was killed, Wright overheard defendant tell his friends, that "Curtis screamed like a girl" and "Curtis died on an empty stomach." Defendant seemed proud of what he had done. He subsequently threatened Wright and prevented her from seeing her family and friends. She wanted to break up with him but defendant threatened to kill her and told her, "we're in this together." He claimed that everything he did was for Schwind.

On March 31, 2006, the police served a search warrant on defendant's apartment. Before the police entered the apartment, defendant threw his SKS rifle and clip out of the bedroom window. The police recovered several silencers and various types of ammunition from the apartment. In addition, they found the SKS rifle loaded with ammunition and an attached scope directly below defendant's apartment window. Defendant was arrested for Carr's murder.

Prior to trial, defendant denied any involvement in Carr's shooting. Upon his arrest, however, his outgoing telephone calls were monitored. In a conversation with Simmons, he told Simmons that they did not have the gun but "they got one of my rounds." Defendant spoke with Simmons's mother who told him to say that he was with her in Martinez at the time of the shooting.

Defendant subsequently called Simmons again and asked him to talk with Wright about his alibi that he was in Martinez with Simmons and his mother at the time of the shooting. He also called his grandmother and told her about the alibi.

The police arrested Simmons and his mother for being accessories after the fact of murder. In his interview with police, Simmons expressed that he was scared of defendant. Simmons told the police that defendant admitted to him that he killed Carr. He told the police that he thought he would be killed when he left the police department. At trial, when questioned about a subsequent interview with the district attorney, Simmons testified that defendant "maybe" told him "something like" he "pulled up, Curtis came up to the car and he said like nice parking or something, and then he just shot him. He said he shot him pop, pop,

3

pop, pop...." Simmons further testified that after he gave a statement to the district attorney, his truck was hit and totaled on the left side while it was parked in front of his house. Someone told him that the hit was in retaliation for his cooperation with the police.

Defendant also admitted that he shot Carr to Michael Wilson, an acquaintance he spoke with in jail.

Carr suffered five gunshot wounds. The cause of death was a gunshot wound of the torso. The trajectory of the wounds was consistent with a person firing from inside a vehicle at a person bending or leaning into the vehicle.

At trial, defendant acknowledged the evidence that he killed Carr was overwhelming, and claimed he initially lied that he was not involved because he did not want his grandparents to know. He testified that he drove into the parking lot of Sizzler and saw Carr, standing by his Toyota 4-Runner. Carr then walked toward defendant's car and stood on the sidewalk near the front of the restaurant. Carr said something and then put his hand under his shirt. Defendant saw the handle of a gun under Carr's shirt, thought Carr was going for his gun, and shot him. He did not know how many times he shot him.

*People v. Perrault*, 2010 WL 308344, *1–*4 (Cal. Ct. App. 2010).

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams v. Taylor*, 529 U.S. 362, 384–86 (2000), while the second prong applies to decisions based on factual determinations.  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

4

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 405–06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340. Where constitutional error is found, habeas relief is warranted only if the error at issue had a "substantial and injurious effect on the verdict." *Penry v. Johnson*, 532 U.S. 782, 796 (2001) (citation omitted).

In determining whether the state court's decision is contrary to or involved an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claims in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Here, the California Court of Appeal was the highest court to address, in a reasoned opinion, Petitioner's claims of due process violation and ineffective assistance of counsel. Thus, it is that opinion that the Court reviews when ruling on Petitioner's instant claims.

## DISCUSSION

Petitioner raises the following claims for habeas corpus relief: (1) violation of his due process rights due to prosecutorial misconduct during closing argument; and (2) ineffective assistance of counsel. (Petition 11–21.) Both of these arguments were raised before the state

United States District Court
Northern District of California

1  appellate court, and both were rejected.  Accordingly, as to all claims, this Court will assess

2  whether the state appellate court's decision was unreasonable.

3  **I.   PROSECUTORIAL MISCONDUCT AND FAILURE TO OBJECT**

4  Petitioner contends that the prosecutor engaged in prejudicial, erroneous conduct by arguing

5  that petitioner was "the biggest liar he'd ever seen."  Specifically, Petitioner claims that by making

6  this statement, the prosecutor improperly referred to evidence not in the record, and vouched for

7  and warranted his own case, thereby improperly making himself a witness.  (Petition at 11.)

8  Petitioner next claims that the prosecutor referred to other evidence not in the record or

9  misrepresented evidence in the record when he argued that Carr had his cell phone in one hand and

10  his car keys in the other at the moment Petitioner shot him, and that witnesses confirmed this fact.

11  (*Id.* at  8, 12; Ans., Ex. 5 at 1768.)  Finally, Petitioner contends that defense counsel's failure to

12  object to the prosecutor's statements during closing argument constitutes ineffective assistance of

13  counsel.  (*Id.* at 16.)  Respondent counters that the prosecutor's statements did not constitute

14  misconduct and that therefore, there was no ineffective assistance of counsel.  (Response at 5–6.)

15  Having carefully considered the state appellate court's decision, the relevant law, and the

16  record at trial, this Court finds that the state appellate court's rejection of Petitioner's claims was

17  consistent with controlling Supreme Court authority and objectively reasonable based on the facts

18  of this case.

19  **A.  Legal Standards**

20  Habeas relief is warranted only if the prosecutor's comments in closing argument "so

21  infected the trial with unfairness as to make the resulting conviction a denial of due process."

22  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation omitted).  Under *Darden,* a two-step

23  process exists:  whether (1) the prosecutor's conduct was improper; and (2) if so, did such conduct

24  infect the trial with unfairness.  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (citation

25  omitted).

26  Other factors a court may take into account in determining whether prosecutorial

27  misconduct rises to the level of a due process violation are (1) the weight of the evidence of guilt,

28

*see United States v. Young*, 470 U.S. 1, 19 (1985); and whether (2) the misconduct was isolated or part of an ongoing pattern, *see Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987); (3) the misconduct related to a critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972); and (4) the prosecutor's comment misstated or manipulated the evidence, *see Darden*, 477 U.S. at 182.

To establish ineffective assistance of counsel for failure to object, a petitioner must show that (1) counsel made such a serious error that counsel was not functioning as the counsel guaranteed a defendant by the Sixth Amendment, and (2) the deficient performance prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Id.* at 788 (quotation and citations omitted). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Accordingly, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785.

**B.  Analysis**

Petitioner's claim of prosecutorial misconduct and ineffective assistance of counsel for failure to object to the prosecutor's statements was rejected by the state appellate court as follows:

**Prosecutorial Misconduct**

Defendant contends that the prosecutor committed misconduct during closing argument by stating: "And I could say right from the get-go that is the biggest liar I have ever seen, Mr. Perrault." Defendant's claim does not withstand scrutiny.

" 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion-and on the same ground-the defendant made an assignment of misconduct and requested that the jury by admonished to disregard the impropriety. [Citation .]' " (*People v. Hill* (1998) 17 Cal.4th 800, 820 (*Hill* ), quoting *People v. Samayoa* (1997) 15 Cal.4th 795, 841.) Here, defendant did not object to the alleged misconduct below; we, however, review the issue in light of the fact that defendant claims his trial counsel was ineffective for failing to object to the argument.

Defendant argues that the prosecutor's comment that defendant was the "biggest liar I have ever seen" constituted evidence not in the record and resulted in the prosecutor expressing his personal belief in the merits of the case. A prosecutor's reference to facts not in evidence constitutes misconduct because it has a tendency to make the prosecutor his own witness. (*Hill, supra,* 17 Cal.4th at pp. 827–828.) Thus, the prosecutor's remark, to the extent it might have been interpreted to mean, as defendant suggests, that his statement was not limited to the case before the jury, was objectionable. But the comment could also be construed to constitute fair comment on the evidence. There was substantial evidence in the record that defendant lied.

A prosecutor is given wide latitude during closing argument. "The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom." (*Hill, supra,* 17 Cal.4th at p. 819.) Hence, while it is misconduct for a prosecutor to express his personal belief in the veracity of a witness (*People v. Johnson* (1981) 121 Cal.App.3d 94, 102–103), in this case, there was direct evidence that defendant had lied throughout the investigation of the case and that his story changed only when faced with the overwhelming evidence against him. Thus, the prosecutor's remark was warranted by the evidence. Similarly, defendant's claim, that the prosecutor's argument that "Curtis Carr had his phone in one hand, and his keys in the other, and the defendant blew him away," was not based on the evidence, fails. This argument was based on legitimate inferences from the record and did not constitute misconduct.

Even if we were to construe the prosecutor's argument as defendant suggests, we cannot conclude that defendant was prejudiced by the prosecutor's remarks in light of the overwhelming evidence of defendant's guilt. Prosecutorial misconduct requires reversal only when, viewing the record as a whole, it results in a miscarriage of justice. (*People v. Green* (1980) 27 Cal.3d 1, 29.)

*Perrault*, 2010 WL 308344 at *2–*3.

In his federal petition, Petitioner does not directly address the state appellate court's reasons for rejecting his claim that the prosecutor's comments constituted misconduct and resulted in

United States District Court
Northern District of California

United States District Court
Northern District of California

1  prejudice.  Rather, Petitioner argues as if on a blank slate, simply rearguing the merits of his earlier-

2  made claims.  In so doing, Petitioner appears to ask this Court to review his claims *de novo*, which

3  this Court cannot do.   A federal district court's review on writ of habeas corpus is "the narrow one

4  of due process, and not the broad exercise of supervisory power."  *Donnelly v. DeChristoforo*, 416

5  U.S. 637, 642 (1974).  Accordingly, the Court reviews the state appellate court's decision to ensure

6  that it is not "contrary to, or involved an unreasonable application of, clearly established Federal

7  law, as determined by the Supreme Court of the United States" or "based on an unreasonable

8  determination of the facts in light of the evidence presented in the State court proceeding."  28

9  U.S.C. § 2254(d).  In evaluating Petitioner's allegations of prosecutorial misconduct on a writ of

10  habeas corpus, *Darden v. Wainwright* instructs that "it is not enough that the prosecutors' remarks

11  were undesirable or even universally condemned[,] [t]he relevant question is whether the

12  prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a

13  denial of due process." 477 U.S. at 181 (citations and quotations omitted).

14       Here, the state appellate court found that the prosecutor's assertion that the victim had a cell

15  phone in one hand and his keys in another when he was shot was a fair inference drawn from the

16  evidence of record.  Because the state appellate court's finding was "based on a factual

17  determination [it cannot] be overturned on factual grounds unless objectively unreasonable in light

18  of the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340 (citing 28

19  U.S.C. § 2254(d)(2)).  Evidence of record, including witness statements, supports the prosecutor's

20  inference that Carr had his phone and keys in hand when Petitioner shot him.  (*See* Ans., Ex. 5 at

21  106–10 (witness Bobby Mask's testimony that Carr was holding a cell phone when laying on the

22  ground after being shot); *id*. at 174–75, 181 (officer testified that as Carr lay on the ground, by

23  Carr's right hand lay a cell phone and by his left hand a set of keys); *id*. at 180–81 (officer explains

24  photographic evidence showing where the cell phone and keys were in relation to Carr's body).)  In

25  light of the evidence of record, the state appellate court reasonably concluded that the prosecutor's

26  statement concerning what Carr had in his hands when Petitioner shot him was a fair inference

27  drawn from the evidence.  This Court will therefore not disturb that conclusion.

28

9

1    The state appellate court also found that the prosecutor's remark that Petitioner was "the

2    biggest liar" he had ever seen did not amount to misconduct because although it was objectionable

3    to the extent that it could be interpreted as evidence not in the record, the remark could also be

4    construed as a fair comment on the evidence that Defendant had lied repeatedly.  The state

5    appellate court concluded that given the facts of record, the prosecutor's remark was a fair

6    comment on the evidence falling well within the "wide latitude" accorded to prosecutors during

7    closing argument.  *See Perrault*, 2010 WL 308344 at *3.  Thus, the state court of appeals found that

8    the remark did not constitute misconduct.[1]

9    This Court has carefully and closely reviewed the closing argument transcript and finds that

10   the state appellate court's conclusion was objectively reasonable.  Petitioner selects one sentence of

11   the record in isolation and conveniently ignores the context in which it was stated.  In considering

12   the context, it becomes clear that the prosecutor's remark was not intended as evidence, nor could it

13   reasonably have been interpreted as such.  When the prosecutor made this remark, he was in the

14   process of walking the jury through testimony, witness by witness.  (*See* Ans., Ex. 5 at 1658 ("I

15   want to talk a little bit . . . about the witnesses in this case, the witnesses presented by the People.");

16   *see also id.* at 1655 ("[I]n the deliberation, what you do now is you determine what the facts are.

---

[1] Although the state appellate court noted that defense counsel lodged no objection to the prosecutor's statements and that as a general rule, a defendant may not complain on appeal unless a timely objection was made at trial, it nonetheless considered the merits of Petitioner's arguments to determine whether counsel's failure to object constituted ineffective assistance of counsel.  *See Perrault*, at *4–*5.  It was proper for the state appellate court to consider simultaneously the merits of Petitioner's arguments regarding prosecutorial misconduct and ineffective assistance for failure to object.  Petitioner may show cause for a procedural default by establishing constitutionally ineffective assistance of counsel and prejudice by demonstrating a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different.  *See Baldwin v. Adams*, 899 F.Supp.2d 889, 904 (N.D. Cal. 2012) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Vansickel v. White*, 166 F.3d 953, 958 (9th Cir. 1999)).  Because the state appellate court concluded that the prosecutor's remark resulted in no due process violation and no prejudice to Petitioner, it implicitly determined that defense counsel's failure to object did not result in unconstitutional ineffective assistance of counsel.  As this Court has determined that the state appellate court properly found that the prosecutor's remark resulted in no due process violation or prejudice, it likewise finds that the state appellate court's finding that defense counsel did not render ineffective assistance by not objecting to the prosecutor's remark was reasonable.

10

1   And you determine the facts by looking at all of the evidence.  And evidence is statements by

2   witnesses who have testified in the trial, and the exhibits that are now into evidence, the firearms,

3   all of those things that are presented to your senses, or to your hearing, or your eyes, is all

4   evidence.").)  The prosecutor next proceeded to remind the jury of the many witnesses who had

5   testified: Candace Wright, Petitioner's girlfriend; Jack Simmons, who "hung around with Mr.

6   Perrault"; Detective Messier, who said that Candace "was frightened" and "very scared"; Lynsie

7   Dawn Duffy; Officer Pistello; Katie and Garland, an "interesting couple"; Larry Dorton; Kevin

8   Abaya; and Michael Wilson, who "talked about the gun and how the gun had a silencer on it."  (*See*

9   Ans., Ex. 5 at 1658-65.)  The prosecutor then said "[w]e know from the defendant that when the

10  defendant got the gun he got it from Misha with the silencer on it.  He was telling the truth, folks.

11  He was telling the truth."  (*Id.* at 1665.)  But because there was ample evidence in the record of

12  Petitioner's repeated lies, the prosecutor offhandedly dismissed Petitioner's brief flirtation with the

13  truth, saying, "We'll talk about his statements at a later time.  And I could say right from the get-go

14  that this is the biggest liar I have ever seen, Mr. Perrault."  (*Id.*)   The prosecutor then immediately

15  returned to discussing the litany of witness testimony of record.

16       In light of the context in which the prosecutor made this statement, it was reasonable for the

17  state appellate court to conclude that the prosecutor's remark was not intended as evidence, nor

18  could it have been interpreted as such.  There was substantial evidence in the record that Petitioner

19  had lied repeatedly, including Petitioner's own testimony.  The prosecutor's statement could

20  reasonably be understood as a fair comment on that evidence.  The state appellate court's

21  conclusion that the remark did not constitute misconduct was reasonable.[2]

22

23  [2] The Court notes, however, that insofar as context bears on its conclusion in this case, a difference in context could produce a markedly different result.  A prosecutor's statements vouching for or

24  against credibility are dangerous because a jury "may be inclined to give weight to the prosecutor's opinion in assessing the credibility of witnesses, instead of making the independent judgment of

25  credibility to which the defendant is entitled."  *See United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005) (citing *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985); *United*

26  *States v. Young*, 470 U.S. 1, 18–19 (1985)).  Accordingly, as a general rule, a prosecutor may not express his opinion of the defendant's guilt.  *See United States v. Moreland*, 622 F.3d 1147, 1161

27  (9th Cir. 2010) (citations and internal quotations omitted).

28

11

United States District Court
Northern District of California

1        Furthermore, Petitioner has failed to show that the prosecutor's comments "so infected the
2   trial with unfairness as to make the resulting conviction a denial of due process," *Darden*, 477 U.S.
3   at 181, or that the state appellate court's findings on that question were unreasonable.  Applying
4   that standard, it is clear that the state appellate court's conclusion that even if the prosecutor's
5   remark constituted misconduct, there had been no prejudice to Petitioner amounting to a
6   miscarriage of justice was objectively reasonable.  Overwhelming evidence existed in the record
7   that Petitioner lied repeatedly about his degree of involvement in the murder of Curtis Carr.
8   Indeed, Petitioner tried to blame three different people for the murder before finally admitting guilt.
9   (*See* Ans., Ex. 5 at 1559–1561 (Petitioner first accused Rich Reza of the shooting); *id.* at 1468–
10  1469 (Petitioner later accused Anthony Loyeza and Jimmy Jones of the murder).)  The trial
11  transcript is replete with evidence of Petitioner's myriad and varied lies.  For example, asked
12  whether he had lied during an interrogation by law enforcement, Petitioner not only admitted that
13  he had lied during the entire interview, but added that "I have lied this whole time in custody, also."
14  (*See id.* at 1488 ("A: Well, I was lying when they interrogated me"; *id.* at 1491 ("A: ... I am not
15  arguing with you at all.  I lied about everything.").)  Petitioner lied about whether he had loaded
16  ammunition into the murder weapon.  (*Id.* at 1517 ("A.  Yes, sir, I lied.  I have a lot of
17  ammunition.").)  Petitioner lied to his grandparents when he denied responsibility for the murder.
18  (*Id.* at 1469 ("Q: And you lied to [your grandparents], didn't you?  A: Yes.").)  Petitioner admitted
19  that he had lied to his attorney and to everyone else "to the bitter end."  (*Id.* at 1577.)

20       The state appellate court's conclusion that the prosecutor's remark resulted in no
21  miscarriage of justice was well-founded and reasonable.  This Court agrees that the balance of the
22  evidence, with particular attention to Petitioner's own testimony, establishes that Petitioner was
23  profoundly untrustworthy.  In addition, this Court agrees that the evidence of Petitioner's guilt was
24  overwhelming.  The prosecutor's lone remark did not "so infect[] the trial with unfairness as to
25  make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181.  The state
26  appellate court's rejection of Petitioner's prosecutorial misconduct claim is therefore affirmed.
27
28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner contends that defense counsel was ineffective in failing to argue imperfect self-defense as well as self-defense during closing argument.  (Petition at 17.)  Petitioner further argues that defense counsel was ineffective in failing to request a special instruction that an intentional shooting from a car would not be a drive by shooting murder if Petitioner had acted in either self-defense or imperfect self-defense.  (*Id*. at 20.)  Again, both of these arguments were considered and rejected by the state appellate court.  Having carefully considered the state appellate court's decision, the relevant law, and the record at trial, this Court finds that the state appellate court reasonably rejected Petitioner's ineffective assistance of counsel claims.

### A.  Legal Standard

The Sixth Amendment guarantees criminal defendants the effective assistance of counsel.  That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense.  *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003), *Strickland*, 466 U.S. at 687).  Because the state appellate court considered and rejected Petitioner's ineffective assistance claims, this Court may only issue habeas relief if the state appellate court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."  *Yarbrough*, 540 U.S. at 5 (citations omitted).

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner first must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland*, 466 U.S. at 687–88.  "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance."  *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689).  Petitioner must also establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

13

United States District Court
Northern District of California

1   would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability

2   sufficient to undermine confidence in the outcome.  *Id.*

3        The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and

4   when the two apply in tandem, review is doubly so."  *Harrington*, 131 S. Ct. at 788 (quotation and

5   citations omitted).  Where, as here, section 2254(d) applies, "the question is not whether counsel's

6   actions were reasonable.  The question is whether there is any reasonable argument that counsel

7   satisfied *Strickland*'s deferential standard."  *Id.*

8        It is unnecessary for a federal court considering an ineffective assistance of counsel claim

9   on habeas review to address the prejudice prong of the *Strickland* test if the petitioner cannot

10  establish incompetence under the first prong.  *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir.

11  1998).  Similarly, a court need not determine whether counsel's performance was deficient before

12  examining the prejudice suffered by the petitioner as the result of the alleged deficiencies.  *See*

13  *Strickland*, 466 U.S. at 697.

14             **B.  Failing to Argue Imperfect Self Defense During Closing Argument**

15       Petitioner argues that defense counsel was ineffective because she failed to argue imperfect

16  self-defense during closing argument.  The Court notes that not only did Petitioner raise this issue

17  on direct appeal, but he also raised it in his motion for a new trial.  Both the trial court and the state

18  appellate court rejected Petitioner's argument.  This Court similarly finds that this argument lacks

19  merit.

20       The state appellate court addressed Petitioner's argument as follows:

21            **Imperfect Self-defense**

22
23         Defendant argues that his counsel was ineffective because she failed to
    argue imperfect self-defense during closing argument. He also raised this issue in
    support of his motion for new trial. Defendant's argument lacks merit.

24
25         The People submitted the declaration of defense counsel in opposition to
    defendant's motion for a new trial. In the declaration, defense counsel explained

26  that "[a]fter discussing all of the possible defenses to the charge of murder with
    Mr. Perrault, including the fact that his own statements precluded arguing he

27
28

wasn't the shooter, Mr. Perrault wanted me to argue the available defense most likely to gain him an acquittal. That defense was self-defense."

Hence, the record is clear that defendant, together with his counsel, agreed on a tactical strategy of arguing for a complete acquittal based on self-defense. "The decision of how to argue to the jury after the presentation of evidence is inherently tactical; counsel's approach comes within the permissible range of competent representation." (*People v. Freeman* (1994) 8 Cal.4th 450, 498.) Here, counsel was faced with a situation in which her client changed his story after the presentation of the People's case and chose to testify that he killed Carr in self-defense. As the trial court explained in denying defendant's motion for a new trial, it was not defense counsel's strategy in closing argument that was problematic, but rather defendant's lack of credibility to support his 11th hour claim of self-defense. "The fact that the jury did not accept [defendant's] testimony again is not a result of [defense counsel's] failure, but a result of Mr. Perrault's lack of credibility based on his own conduct, his multiple lies, his efforts to lie to others and create alibis and his admitted changing stories throughout the investigation and throughout the trial up until the time he testified."

Moreover, contrary to defendant's contention, arguing imperfect self-defense would not have been to his benefit given his testimony at trial. Defendant posits that defense counsel could have argued that defendant unreasonably mistook the cell phone Carr was holding for a gun. But defendant's testimony was that he saw Carr reach for his gun, and he never mentioned that he thought Carr's cell phone was a gun. Given defendant's testimony, it is unlikely that the jury would have accepted the theory that defendant acted on the unreasonable belief that he feared Carr was armed. As the trial court found, both theories "hinged on Mr. Perrault's credibility and that was severely damaged in this trial." The jury, however, was instructed on imperfect self-defense and we must presume that the jury understood and correlated all of the instructions presented.[3] (*People v. Pinholster* (1992) 1 Cal.4th 865, 919 (*Pinholster* ).) In light of the overwhelming evidence of defendant's guilt, it is not reasonably probable that a different verdict would have been reached had counsel adopted a different strategy in her argument to the jury. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 694; *People v. McPeters* (1992) 2 Cal.4th 1148, 1187.)

*Perrault*, 2010 WL 308344 at *4 (footnote included in original opinion, renumbered).

Petitioner does not directly address the state appellate court's findings.  Rather, Petitioner reargues the merits of his earlier position, claiming that "a reasonably competent defense counsel

---

[3] The trial court gave CALJIC Nos. 5.12 and 5.17, the standard instructions on self-defense and imperfect self-defense, respectively.

would have argued both self-defense and imperfect self-defense," and that defense counsel was obligated to argue imperfect self-defense even if Petitioner had directed her to the contrary. (Petition at 17–20.)  That, however, is not enough to support a finding of ineffective assistance of counsel.  Even if Petitioner is correct that defense counsel's failure to argue imperfect self-defense constituted ineffective assistance, Petitioner must also establish that there was a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different and that the state appellate court's finding to the contrary was objectively unreasonable.  *Strickland*, 466 U.S. at 694.  Notably absent from Petitioner's Petition, Memorandum, and Traverse is any discussion of whether there is a reasonable probability that the result of the proceedings would have been different had defense counsel made an imperfect self-defense argument in her closing statement to the jury.  Nor does Petitioner argue that the state appellate court's finding that there was no ineffective assistance was "objectively unreasonable." *See Yarborough*, 540 U.S. at 5.

Regardless, having considered the evidence of record and controlling authority, the Court finds that the state appellate court's ruling that counsel did not render ineffective assistance was based on a reasonable application of Supreme Court precedent to the facts of record.  The Supreme Court has stated:

> The right to effective assistance extends to closing arguments.  *See Bell v. Cone*, 535 U.S. 685, 701–702 (2002); *Herring v. New York*, 422 U.S. 853, 865 (1975). Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should "sharpen and clarify the issues for resolution by the trier of fact," *id.,* at 862, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. *See Bell*, *supra*, at 701–702. Judicial review of a defense attorney's summation is therefore highly deferential–and doubly deferential when it is conducted through the lens of federal habeas.

United States District Court
Northern District of California

*Yarborough*, 540 U.S. at 5–6.  Furthermore, where the strategic choices of defense counsel are at issue, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (citing *Strickland*, 466 U.S. at 689 (internal quotation marks omitted)).

In opposition to Petitioner's motion for a new trial, defense counsel submitted a declaration wherein she explained that "[a]fter discussing all of the possible defenses to the charge of murder with Mr. Perrault, including the fact that his own statements precluded arguing he wasn't the shooter, Mr. Perrault wanted me to argue the available defense most likely to gain him an acquittal. That defense was self-defense."  (Ans., Ex. 1 at 381.)  The state appellate court drew a reasonable factual conclusion that both Petitioner and his counsel made a tactical decision to argue self-defense during closing statements.  This Court will not second-guess the state appellate court's reasonable factual determination.  *See Edwards*, 475 F.3d at 1126.  Having found that the decision not to argue imperfect self-defense was a tactical one, the state appellate court then reasonably concluded that the tactical decision fell within the "wide latitude" accorded to defense counsel in deciding how best to represent Petitioner during her closing statement.

Moreover, the state appellate court made a reasonable determination that in light of the trial record, the fact that defense counsel made no imperfect self-defense argument did not result in any prejudice to Petitioner.  As an initial matter, the jury received an instruction on imperfect self-defense and was therefore informed and aware of this defense when rendering its final verdict.  In addition, the state appellate court reasonably concluded that the jury was unlikely to believe that Petitioner had acted in imperfect self-defense upon mistaking the victim's cell phone for a gun. Petitioner testified that he saw the victim's gun, not an object that he mistakenly believed to be a gun.  (*See* Ans., Ex. 5 at 1435, 1436, 1540 ("A: Yes, I seen his gun").)  Furthermore, Petitioner expressly stated that the victim did not have a cell phone in his hand prior to being shot.  (*Id*. at 1535.)  Thus, it is unlikely that the jury would have believed Petitioner's imperfect self-defense

17

argument even had it been argued during closing statements. In sum, Petitioner's own testimony that he saw Carr's gun and not something he mistook for a gun, combined with the substantial evidence of record documenting Petitioner's repeated and varied lies, support the state appellate court's finding that the jury was unlikely to have reached a different verdict if it had heard an argument for imperfect self-defense during the defense's closing statement. Because the state appellate court reasonably rejected Petitioner's claim, this Court affirms its decision.

### C.  Failing to Request a Special Instruction

Petitioner's final argument is that defense counsel should have requested a special instruction that an intentional shooting from a car would not be a drive-by shooting murder if petitioner acted in self-defense or imperfect self-defense. (Petition at 20–21.) The state appellate court rejected this argument as follows:

> **Special Instruction on Self-defense**
>
> Defendant argues that since the prosecution proceeded on two theories of first degree murder-premeditated murder and murder in a drive-by shooting-defense counsel should have requested a special instruction indicating that self-defense and imperfect self-defense applied as defenses to a drive-by murder. An additional instruction was not required.
>
> The jury was instructed on premeditated murder and murder perpetuated by discharging a firearm from a vehicle as well as the defenses of self-defense and imperfect self-defense. Contrary to defendant's argument, it was not likely that the jury was confused and did not understand that both defenses also applied to murder in a drive-by shooting. While defense counsel argued that this case was not a typical drive-by shooting case because it did not involve a car driving up to a group of people and someone in the car shooting at the crowd or an exchange of gunfire between two moving cars, she sought to show that defendant did not have the specific intent to kill when he drove to Sizzler to meet Carr. Her argument was consistent with the defense theory of the case that defendant only shot Carr in self-defense when he thought Carr was going for his gun. Defense counsel's argument did not mandate an additional instruction on self-defense as it applied to drive-by murders. We presume that the jurors understood and followed the court's instructions. (*Pinholster, supra,* 1 Cal.4th at p. 919; *People v. Scott* (1988) 200 Cal.App.3d 1090, 1095.) Here, the instructions as a whole adequately informed the jury of the relevant legal principles of the case. (See *People v. Kegler* (1987) 197 Cal.App.3d 72, 80 [court must consider instructions giving a specific instruction].) No further instructions were warranted.

18

United States District Court
Northern District of California

1  *Perrault*, 2010 WL 308344 at *5.

2      Again, Petitioner advances no argument to establish that there was a reasonable probability

3  that but for counsel's failure to request a special instruction, the result of the proceeding would

4  have been different.  *Strickland*, 466 U.S. at 694.  Nor does Petitioner offer any authority to show

5  that the state appellate court misapplied controlling Supreme Court precedent or argue that the state

6  appellate court's decision was objectively unreasonable.

7      The state appellate court's rejection of Petitioner's claim reflects a well-reasoned evaluation

8  of the facts of record.  It was proper for the state appellate court to conclude that because the jury

9  had been informed of the relevant legal principles of the case, it rendered a verdict with full

10  knowledge of the defense of imperfect self-defense as it applied to both theories of murder, thereby

11  obviating any concern that Petitioner had been prejudiced by the lack of a special instruction.

12  *Strickland*, 466 U.S. at 694; *see also Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (evaluation of jury

13  instructions assumes that jury considered instructions as a whole.)  The jury instructions informed

14  the jury on both self-defense and imperfect self-defense, and it was reasonable for the state

15  appellate court to conclude that the jury understood these instruction to apply to the drive-by and

16  first-degree theories of murder.  Indeed, Petitioner's claim that the jury was likely confused is

17  belied by Petitioner's admission that even though defense counsel misstated a legal standard during

18  closing argument (to which the prosecutor objected), the "jury would have realized" the error "upon

19  reviewing the instructions."  (Petition at 21.)  Thus, Petitioner impliedly concedes that the jury was

20  well-informed of the particulars of its instructions.

21      The state appellate court reasonably concluded that because the jury was informed of both

22  defenses and their applicability to both theories of murder, no special instruction was required.

23  Accordingly, this Court denies Petitioner's claim.

24                                  **<u>CONCLUSION</u>**

25      For the reasons stated above, Petitioner Michael Perrault's petition for writ of habeas corpus

26  is hereby **DENIED**.  A certificate of appealability will not issue.  Reasonable jurists would not "find

27  the district court's assessment of the constitutional claims debatable or wrong."  *See Slack v.*

28

                                      19

*McDaniel*, 529 U.S. 473, 484 (2000).  Petitioner may seek a certificate of appealability from the Court of Appeals.  The Clerk shall enter judgment in favor of Respondent and close the file.

   **IT IS SO ORDERED**.

Date:April 4, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

20